## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EUGENE H.                                        :              CIVIL ACTION
                Plaintiff                :
        v.                           :
                                       :
MARTIN O'MALLEY,                          :
Commissioner of the Social               :
Security Administration,                   :
             Defendant              :              NO.  24-1310

### MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                          September 27, 2024

Eugene H. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final

decision of the Commissioner of the Social Security Administration ("the Commissioner"),

denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social

Security Act.  Plaintiff has filed a brief in support of his request for review, the Commissioner has

responded to it, and Plaintiff has replied.  For the reasons set forth below, Plaintiff's request for

review is denied.

## I.     PROCEDURAL HISTORY[1]

On June 28, 2021, Plaintiff applied for SSI, alleging disability that commenced on October

19, 2020.  R. 17.  The claim was denied, initially and upon reconsideration; therefore, Plaintiff

requested a hearing.  *Id.*  On February 14, 2023, Plaintiff appeared for a hearing, before Nycole

Watson, Administrative Law Judge ("the ALJ"); Plaintiff, represented by an attorney, and

Lawrence Ostrowski, a vocational expert, ("the VE") testified at the hearing.[2]  *Id.*  On June 2,

---

[1] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Brief and Statement of Matters Complained of On Appeal ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply in Support of Request for Review ("Reply"), and the administrative record.  ("R.").
[2] The VE testified telephonically.  R. 17, 50-51.

2023, the ALJ, using the sequential evaluation process ("SEP") for disability,[3] issued an unfavorable decision.  R. 17-41.  The Social Security Administration's Appeals Council denied Plaintiff's request for review, on February 5, 2024, making the ALJ's findings the final determination of the Commissioner.  R. 1-3.  Plaintiff now seeks judicial review and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.    FACTUAL BACKGROUND

A.    <u>Personal History</u>

Plaintiff, born on June 6, 1969, R. 39, was 53 years old on the date of the ALJ's decision. He is a widower and resides with his teenage daughter and adult daughter.  R. 60-61.  Plaintiff last worked in 2019.  R. 69.

B.    <u>Plaintiff's Testimony</u>

At the February 14, 2023 administrative hearing, Plaintiff testified about his limitations. R. 60-82.  He identified his most serious impairment as back pain and an inability to bend fully

---

[3] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1.  If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. § 416.9 20(b).
>
> 2.  If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. § 416.920(c).
>
> 3.  If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise proceed to Step 4.  *See* 20 C.F.R. § 416.920(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed.  Otherwise proceed to Step 5.  *See* 20 C.F.R. § 416.920(f).
>
> 5.  The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled.  *See* 20 C.F.R. § 416.920(g).

that resulted from a back injury and major surgery in 2015,[4] which did not fully correct his ailment. R. 75-76.  Plaintiff now uses a prescribed cane to walk and a walker when he goes food shopping. R. 78.

Plaintiff also suffers from memory loss; he forgets appointments, where he has left objects, and to take his medication; his mind wanders when he watches television.  R. 76, 80.  As a result, his assigned case worker[5] accompanies him to appointments and helps explain doctor's instructions to him.  R. 79.

Plaintiff can bathe, dress and groom himself independently, except that he occasionally needs assistance donning shoes.  R. 69, 78.  He performs no household chores;  he grocery shops once every two weeks, using a walker.  R. 70, 78.  Plaintiff estimated that he can walk five to ten minutes before needing to rest, stand for ten minutes, and lift approximately three pounds.  R. 72.

C.    Vocational Testimony

The VE characterized Plaintiff's past industrial commercial cleaner job as medium[6] and unskilled[7]; Plaintiff had a composite job of gate guard (light[8] and semi-skilled[9]), cook helper (medium, unskilled), and industrial commercial cleaner (medium, unskilled); his DJ job was light and semi-skilled.  R. 84-90.  The ALJ then asked the VE to consider a person of Plaintiff's age, education and work experience, who could perform light work, with additional limitations:

---

[4] Plaintiff testified that his surgery involved placing two braces and eight screws into his back.  R. 75-76.  As a result, he can no longer bend fully.  R. 76.

[5] Plaintiff is assigned a case worker as part of his ongoing efforts to maintain sobriety.  R. 73, 79.

[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 416.967(c).

[7] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs."  20 C.F.R. § 416.968(a).

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).

[9] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties."  20 C.F.R. § 416.968(b).  It is less complex than skilled work but more complex than unskilled work.  *Id.*  "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."  *Id.*

occasional pushing and pulling with the upper and lower extremities; occasionally climb ramps and stairs; never kneel, crawl, climb ladders, ropes or scaffolds; never balance; avoid exposure to extreme cold and wet weather, excessive vibration and unprotected heights; understand remember and carry out simple instructions; perform routine tasks, and make simple work related decisions; unable to multitask or perform detailed job tasks, unable to employ significant judgment, unable to comply with short deadlines or work as part of a team; unable to work at a production rate pace with strict deadlines; able to sustain ordinary routines without special supervision; and able to tolerate occasional changes in the work setting.  R. 92-93.  The VE opined that this individual could not perform any of Plaintiff's past work.  R. 93.  However, the person could perform the **unskilled** jobs of:  (1) electrical accessories assembler, 40,000 jobs in the national economy; (2) small products assembler, 22,000 jobs in the national economy; (3) sewing machine operator, 61,000 jobs in the national economy; and (4) marker, 150,000 jobs in the national economy.  R. 93-94.  If the individual was able to stand or walk for only four hours, only the electrical accessories assembler and sewing machine operator jobs would be available.  R. 96.

Next, the ALJ asked the VE to consider the same individual, but limited to frequent reaching, fingering, feeling, and handling.  R. 97.  The VE opined that this limitation would eliminate the sewing machine operator job, but the others would remain viable.  R. 97.

Plaintiff's attorney asked the VE if being absent from work three or more days each month would affect the ability to work; the VE opined that such limitation would preclude any work.  R. 99.  Furthermore, if the individual had marked limitation in the ability to respond to supervisors and interact with others, he could not perform any of the identified jobs.  R. 100-01.  Finally, the VE confirmed that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"), except for areas not covered by the DOT, which was based on his experience.  R. 103-

04.

### III.      THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1.      [Plaintiff] not engaged in substantial gainful activity since January 28, 2021, the application date (20 CFR 416.971 *et seq.*).

2.      [Plaintiff] has the following severe impairments: degenerative joint disease of the left knee, degenerative joint disease of the lumbar spine, obesity, major depressive disorder, bipolar disorder, anxiety disorder, posttraumatic stress disorder (PTSD), and mild intellectual disability (20 CFR 416.9 20(c)).

3.      [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4.      After careful consideration of the entire record, I find that, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 416.967(c) except [he] is able to occasionally lift twenty pounds, frequently lift and/or carry ten pounds; stand and/or walk for a total of about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; push/pull limited to occasional with the upper extremities and the lower extremities; he can occasionally climb ramps or stairs, stoop, and crouch, but never kneel, crawl, or climb ladders, ropes, or scaffolds and never balance, as that term is defined in companion publications to the Dictionary of Occupational Titles (DOT); he can perform manipulative maneuvers (reaching, handling, fingering, and feeling) on a frequent basis; he will need to avoid exposure to extreme cold weather, wet weather conditions, excessive vibration, and unprotected heights; he can understand, remember, and carry out simple instructions and perform routine tasks and can make simple work-related decision; he can tolerate a low level of work pressure, which I define as work not requiring multitasking, significant independent judgment, very short deadlines, or teamwork in completing job tasks; he can work at a consistent pace throughout the workday, but not at a production rate pace where each task must be completed within a strict time

deadline; he case sustain an ordinary routine without special supervision and can tolerate occasional changes in work setting; he can tolerate occasional interaction with coworkers, supervisors, and the public; however, he is able to participate and cooperate with supervisors and coworkers during the training period for unskilled work.

5.    [Plaintiff] is unable to perform any past relevant work (20 CFR 416.965).

6.    [Plaintiff] was born on June 6, 1969 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7.    [Plaintiff] has a limited education (20 CFR 416.964).

8.    Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not [Plaintiff] has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.    Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 416.969, 416.969(a)).

10.   [Plaintiff] has not been under a disability, as defined in the Social Security Act, since January 28, 2021, the date the application was filed (20 CFR 416.920(g)).

R. 20-21, 27, 38-40.

## IV.   DISCUSSION

A.   Standard of Review

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999)  Substantial evidence is not "a large or considerable amount of

evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ, and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.    Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed"

impairments.  *Heckler*, 461 U.S. at 460.   Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents him from returning to his past employment.  *See Brown*, 845 F.2d at 1214.  If Plaintiff proves that his impairment results in functional limitations to performing his past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given his age, education, work experience and residual functional capacity.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.      Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that Plaintiff could not perform his past relevant but could perform other light, unskilled jobs that exist in the national economy and, hence, was not disabled.  R. 17-41.  Plaintiff disputes the ALJ's decision and argues that the ALJ reversibly erred by:  (1) reaching an under-inclusive residual functional capacity ("RFC") assessment; (2) finding that Plaintiff's hobby as a DJ was evidence that he could perform semi-skilled work; and (3) finding that Plaintiff's intellectual impairment did not arise before he attained age 22, a requirement to meet Listed Impairment ("LI") 12.05B.  Pl. Br. at 1-14.  The Commissioner denies Plaintiff's assertions.  Resp. at 1-18.  This court will address Plaintiff's third, first, and second arguments in this order; the court finds that the Plaintiff's three assertions of error lack merit.

1.   The ALJ's Finding that Plaintiff did not Meet LI 12.05B is Properly Supported

Plaintiff argues that the ALJ committed reversible error by finding that no objective evidence supported finding that his intellectual impairment arose before he reached age 22, which is a requirement to meet LI 12.05B.  Pl. Br. at 11-14.  As explained below, Plaintiff cannot show

that he, otherwise, could satisfy LI 12.05B.[10]

To meet LI 12.05B, a claimant must demonstrate, as relevant herein, a full-scale IQ score below 70, extreme limitation in one, or marked limitation in two of the four areas of mental functioning,[11] and evidence that the intellectual limitation began prior to attainment of age 22. LI 12.05B(1)-(3). The ALJ found that Plaintiff failed to meet LI 12.05B, because, his full-scale IQ score was only 61, but he did not have one extreme or two marked limitations in the four areas of mental functioning; he did not mention when Plaintiff's intellectual limitation arose. R. 26-27. However, when deciding that Plaintiff did not meet LI 12.05A, the ALJ did note that no objective evidence in the record supported finding that Plaintiff's intellectual limitation arose before Plaintiff attained age 22. R. 26. Plaintiff complains that the ALJ erred by ignoring evidence that his intellectual impairment arose before he attained age 22. Pl. Br. at 11-14.

Plaintiff's assertion of error lacks merit for two reasons. First, when deciding that Plaintiff did not meet LI 12.05B, rather than LI 12.05A, the ALJ did not need to rely upon when Plaintiff's intellectual limitation arose. Since this court may only review an ALJ's decision based upon the explanations actually provided, *Fargnoli*, 247 F.3d at 44 n.7, this court is not free to find that the ALJ erred in the manner Plaintiff asserts. Furthermore, the ALJ neither found extreme limitation in one area of Plaintiff's mental functioning nor marked limitation in two areas, as is required to meet LI 12.05B. R. 27. Hence, Plaintiff could not possibly meet LI 12.05B.

### 2. The ALJ Properly Evaluated Plaintiff's RFC

Plaintiff argues that the ALJ reached an under-inclusive RFC assessment. Pl. Br. at 5-7.

---

[10] The court notes that Plaintiff did not testify that his intellectual impairment was his most significant limitation, R. 75-76 and his attorney did not assert that Plaintiff met LI 12.05B. R. 59.

[11] The four areas of mental functioning are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. LI 12.05B(2)(a)-(d).

In making this argument, Plaintiff takes the position that the ALJ substituted her lay judgment for the medical evidence when assessing his RFC.  *Id.* at 5.  As explained below, the ALJ did not err.

Plaintiff filed his application, on June 28, 2021, hence, the new regulations for considering medical opinions apply.  *See* 20 C.F.R. § 416.920c.  Under these regulations, the ALJ does not afford any special weight to any medical opinion in the record.  20 C.F.R. § 416.920c(a).  Further, any opinions, regardless of the source, concerning a claimant's RFC are not considered helpful. 20 C.F.R. § 416.920b(c)(3)(v).  Moreover, an ALJ does not need a medical opinion to support any component of the claimant's RFC.  *Chandler*, 667 F.3d at 362.

Herein, contrary to Plaintiff's assertion, the ALJ was entitled to use her own judgment to evaluate the medical and other evidence in the record and independently evaluate Plaintiff's RFC. 20 C.F.R. § 416.920b(c)(3)(v).  That is precisely what she did.  R. 27-38.  Furthermore, Plaintiff inaccurately asserts that the ALJ was required to identify medical or opinion evidence to justify her RFC assessment.  *Chandler*, 667 F.3d at 362.  Hence, there is no basis to find that the ALJ erred.

3.  <u>The ALJ did not Commit Reversible Error when Considering Plaintiff's History of Serving as a DJ</u>

Finally, Plaintiff argues that the ALJ improperly determined he could perform semi-skilled work based upon his hobby of working as a DJ.  Pl. Br. at 7-11.  Said error would be harmless, inasmuch as Plaintiff's ultimate RFC was for unskilled work, not semi-skilled work.

The ALJ's RFC assessment clearly indicates that Plaintiff is capable only of unskilled work, not semi-skilled work.  *See* R. 27 (finding that Plaintiff can only perform simple, routine tasks and can only make simple, work-related decisions).  Furthermore, the VE identified only unskilled jobs that the hypothetical person with Plaintiff's RFC could perform.  R. 93-94.  Thus, the ALJ's characterization of Plaintiff's former DJ hobby as semi-skilled, R. 24, had no impact on

either the actual RFC assessment set or the ultimate non-disability finding.  Hence, any error in calling the hobby semi-skilled was harmless error that would not warrant remand.  *Rutherford*, 399 F.3d at 553.

An implementing order and order of judgment follow.